UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CALVIN HUTSON,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          Case No. 4:19 CV 64 CDP
                                  )
WILLIAM D. MCKINNEY, JR.          )
                                  )
          Defendant.              )

## MEMORANDUM AND ORDER

Pending before the Court is a motion for summary judgment filed by the

defendant, Dr. William McKinney, on plaintiff Calvin Hutson's deliberate

indifference to medical needs claim under 42 U.S.C. § 1983 and the Eighth

Amendment to the U.S. Constitution.  Because the undisputed evidence shows that

defendant provided plaintiff extensive care for his alleged injury and that he was

not deliberately indifferent to plaintiff's medical needs, I will grant defendant's

motion.

### Background

Plaintiff Calvin Hutson was incarcerated by the Missouri Department of

Corrections at the Potosi Correctional Center (PCC) on May 1, 2013.  Complaint,

ECF 1 at pg. 5.  Plaintiff alleges he arrived at the PCC with a diagnosis of left arm

thrombosis caused by a gun shot wound.  *Id*.  Plaintiff alleges that he had been

prescribed a medication for his injury by a specialist, but Dr. McKinney, the Medical Director at the PCC, refused to renew his prescription and failed to provide treatment for his injury. *Id.* Plaintiff contends that he has lost partial to full use of his hand, that his injury is continuing to cause him pain and suffering, and that his hand now requires surgery because of defendant's refusal to provide treatment. *Id.*

Plaintiff filed his complaint on January 16, 2019 seeking injunctive relief, compensatory damages, and punitive damages. After conducting a frivolity review under 28 U.S.C. § 1915 *et seq.*, the Court issued process only on plaintiff's claim against Dr. McKinney in his individual capacity for deliberate indifference to his medical needs. ECF 4. Defendant filed his motion for summary judgment and statement of material facts on January 23, 2020. ECF 19, 20. Plaintiff filed a response to defendant's motion on December 3, 2020, but he failed to respond to defendant's statement of facts. ECF 38. Accordingly, under Local Rule 4.01(E), defendant's uncontroverted statement of material facts is deemed admitted.[1] E.D. Mo. L.R. 4.01(E).

---

[1] Plaintiff was granted numerous extensions on his deadlines to respond to defendant's motion, and his *pro se* status does not excuse his obligation to comply with the Local Rules. *See, e.g., Cross v. MHM Corr. Serv., Inc.,* No. 4:11CV1544TIA, 2014 WL 5385113, at *2 (Oct. 10, 2014). Regardless, plaintiff does not appear to dispute the accuracy of the verified medical records submitted in support of defendant's motion for summary judgment, and he has not provided any other evidence relevant to his claim. Thus to the extent plaintiff alleges that he has additional evidentiary "proof" of his claim, his unsworn, conclusory assertion is not sufficient to raise a genuine issue of material fact. *See Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010)).

2

## Legal Standards

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  I must view the evidence in the light most favorable to the nonmoving party and accord him the benefit of all reasonable inferences.  *Scott v. Harris*, 550 U.S. 372, 379 (2007).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

The movant bears the initial burden of demonstrating the absence of an issue for trial.  *Celotex*, 477 U.S. at 323.  Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in his pleadings but "must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial."  *Id*. at 324; *Torgerson*, 643 F.3d at 1042.  A factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "Self-

3

serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010); *see also Thomas v. Corwin*, 483 F.3d 516, 526–527 (8th Cir. 2007).

In § 1983 actions, qualified immunity shields government officials from suit unless their conduct violated a clearly established right of which a reasonable official would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). For a plaintiff to overcome qualified immunity, existing precedent must have placed the constitutional question "'beyond debate.'" *City & Cnty. of S.F., Calif. v. Sheehan,* 135 S. Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743 (alteration added) (internal quotation marks and citation omitted).

### Evidence before the Court

Plaintiff received multiple gun shot wounds on December 27, 2012, including one through his left arm. ECF 20 at ¶ 4. Plaintiff underwent emergency surgery and a reverse greater saphenous vein interposition graft was placed to repair a damaged artery. ¶ 5. Plaintiff's surgery was successful, and a follow-up

ultrasound on February 20, 2013, showed that plaintiff was not in danger of a left arm thrombus.  ¶ 12.  However, plaintiff's post-operation records from visits with a physical therapist and vascular surgeon reflect that he had sustained some nerve damage, causing left arm/hand weakness, pain, decreased sensation, and decreased range of motion.  ¶¶ 8-10.  Plaintiff was prescribed Gabapentin for his nerve pain and instructed to continue physical therapy to regain left arm strength and mobility. ¶¶ 8, 10, 14.  Additional surgery was not recommended.  ¶ 12-14.

Plaintiff was transferred to the PCC on May 2, 2013.  ¶ 15.  He was first seen by Dr. McKinney on May 20, 2013.  ¶ 16.  Dr. McKinney performed a physical examination and assessed muscle atrophy with decreased function of left hand.  ¶ 18.  He instructed plaintiff to continue physical therapy, refilled his Gabapentin prescription, and ordered that plaintiff could continue wearing a compression glove he had been issued after his surgery for his hand pain.  *Id.*

Plaintiff's medical records reflect that Dr. McKinney continued to provide medical care for plaintiff's injury for several years after his first examination.  Dr. McKinney evaluated plaintiff for admission to the PCC chronic care clinic on November 18, 2013, during which he noted no changes from the prior physical examination, continued plaintiff's medication, and advised plaintiff to continue physical therapy.  ¶ 24.  Dr. McKinney examined plaintiff again on January 8, 2014 and prescribed him an analgesic balm for his left hand pain.  ¶ 26.  Dr.

5

McKinney additionally refilled plaintiff's Gabapentin prescription on May 31, 2013, August 25, 2013, November 18, 2013, February 4, 2014; he stopped ordering plaintiff's Gabapentin in April 2014 only after plaintiff refused to attend a chronic care appointment, refused to take the medication, and reported to a PCC nurse that he was doing well without the medication.  ¶¶ 20, 23, 25, 27-30.

Plaintiff resumed his regular appointments with Dr. McKinney on October 2, 2014.  ¶ 31.  Plaintiff reported continued hand pain, but somewhat increased mobility; Dr. McKinney noted little physical change in his condition, advised him to continue PT, and refilled his analgesic balm prescription.  *Id.*  Plaintiff's records reflect that Dr. McKinney examined him on March 19, 2015 and September 3, 2015, during which he noted plaintiff's self-reports of functional improvement, but essentially the same physical findings.  ¶¶ 33-34.

Plaintiff next saw Dr. McKinney on February 4, 2016, but plaintiff refused to allow his hand to be examined.  ¶ 37.  Dr. McKinney nonetheless renewed his analgesic balm prescription on March 24, 2016.  ¶ 38.

Plaintiff was again examined by Dr. McKinney on June 30, 2017, March 30, 2017, and October 19, 2017; all three examinations reflect little to no change in plaintiff's physical condition, but plaintiff consistently reported improvement in functioning and denied having any left hand pain.  (¶¶ 39, 45, 50).  Accordingly, Dr. McKinney discontinued plaintiff from the chronic pain clinic, although he

6

again renewed plaintiff's analgesic balm prescription through April 17, 2018.  (¶¶ 53, 55).

The next time plaintiff saw Dr. McKinney was on April 11, 2018.  ¶ 56. This time, plaintiff reported that he had been experiencing left hand pain since he was taken off his Gabapentin prescription, despite having refused to take the medication numerous times in 2014, failing to request a renewal of the prescription in the preceding four years, and consistently denying any left hand pain during routine examinations.  Plaintiff additionally reported that his hand was no longer functional—again contradicting years' worth of his own self-reports of functional improvement—and he requested an evaluation for surgery.  When Dr. McKinney asked plaintiff about the apparent contradiction with his medical history, plaintiff simply denied having made any such statements and left the room without allowing Dr. McKinney to evaluate his hand.  ¶ 62.

During a follow-up visit on April 19, 2018, plaintiff repeated his demand for surgery and stated he would not do PT for his hand.  ¶ 66.  Plaintiff did not request a refill of his analgesic balm prescription, which had expired two days earlier.  ¶ 72.

The last time Dr. McKinney evaluated plaintiff's hand was on September 12, 2018.  ¶ 68.  Plaintiff complained that he was working in food service, and that it was causing him hand pain.  Dr. McKinney issued plaintiff an order excusing him

from work through September 12, 2019.  *Id*.  Dr. McKinney treated plaintiff for an

unrelated condition on January 9, 2019.  ¶ 70.

### Discussion

To establish a constitutional violation based on inadequate medical care, the

plaintiff must show that defendant was deliberately indifferent to an objectively

serious medical need.  *Vaughn v. Gray,* 557 F.3d 904, 908 (8th Cir. 2009); *see also*

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  An objectively serious medical need

is one "that has been diagnosed by a physician as requiring treatment or one that is

so obvious that even a lay person would easily recognize the necessity for a

doctor's attention." *Coleman v. Rahija,* 114 F.3d. 778, 784 (8th Cir. 1997) (citation

omitted).  To satisfy the subjective "deliberate indifference" component, plaintiff

must show that the defendants had knowledge of, yet deliberately disregarded, an

excessive risk to his health.  *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997).

Defendant is entitled to summary judgment as a matter of law because the

undisputed evidence shows that he was not deliberately indifferent to plaintiff's

medical needs.[2]  To the extent plaintiff alleges that defendant outright denied him

medical care, plaintiff's medical records indisputably show that Dr. McKinney

routinely treated plaintiff from May 2013 through January 2019—plaintiff's first

visit with Dr. McKinney was approximately two weeks after his transfer to the

---

[2] Defendant concedes that plaintiff's injury is an objectively serious medical need.

8

PCC, and his last visit with Dr. McKinney was one week before he filed this lawsuit.  Throughout that time, the evidence shows that Dr. McKinney performed numerous physical examinations of plaintiff's left arm and hand, consistently adjusted and refilled plaintiff's prescriptions for pain medication, encouraged plaintiff to continue physical therapy, and ordered the PCC to make accommodations for plaintiff's injury, including limiting plaintiff to the lower bunk and excusing him from food service work.  To say that the level of care plaintiff received is constitutionally adequate would be an understatement. *Pietrafeso v. Lawrence Cnty., S.D.*, 452 F.3d 978, 983 (8th Cir. 2006) (holding a showing of deliberate indifference is greater than gross negligence).

To the extent plaintiff asserts that Dr. McKinney was deliberately indifferent to his medical needs because he failed to refill his Gabapentin prescription, the undisputed evidence shows that Dr. McKinney consistently refilled his prescription through April 2014; that plaintiff began refusing to take the medication that same month; that plaintiff reported to a PCC nurse that he was doing well without the medication; and that he did not again request the medication until four years later in April 2018.  By that point, plaintiff had been using an analgesic pain balm for several years and had consistently reported that his hand pain, strength, and mobility had steadily improved with medication and PT.  In the interim, Dr. McKinney could not have been deliberately indifferent to medical needs he was

9

not made aware of.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Moreover, the evidence shows that plaintiff did not request a refill on his analgesic pain balm prescription even after requesting an evaluation for surgery and reporting total loss of hand functioning in April 2018.

To the extent plaintiff asserts that defendant was deliberately indifferent because he ceased prescribing pain medication and did not recommend him for hand surgery after April 2018, his disagreements with Dr. McKinney's informed medical assessments do not amount to an Eighth Amendment violation.  Plaintiff's verified longitudinal medical records reflect that Dr. McKinney's assessments were entirely reasonable, consistent with the opinions of other healthcare providers who had examined plaintiff's hand, and consistent with plaintiff's self-reports regarding his pain and limitations over the course of many years of routine treatment.  "[T]he question whether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107; *see also Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981) ("[Plaintiff's] difference of opinion over matters of expert medical judgment or a prescribed course of medical treatment fails to state a federal constitutional question.").

For all the foregoing reasons, defendant is entitled to judgment as a matter of law on plaintiff's deliberate indifference claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary

Judgment [19] is **GRANTED**.

An appropriate Judgment is entered herewith.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of March, 2021.

11